**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** <br><br> Plaintiff, <br><br> vs. <br><br> **KODY KELSO,** <br><br> Defendant. | **Case No. 21-3082-01-CR-S-SRB** |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through Teresa A. Moore, United States Attorney for the Western District of Missouri, and undersigned counsel respectfully submits this response to defendant's sentencing memorandum in the above-captioned matter, set for a sentencing hearing on November 23, 2022. For the reasons set forth below, and under the factors set out in 18 U.S.C. § 3553(a), the Government respectfully recommends that this Court sentence the defendant to 264 months' imprisonment followed by a term of supervised release to be determined by the Court.

## I. BACKGROUND

On July 6, 2022, the defendant pleaded guilty, pursuant to a plea agreement to Count 1 charging sexual exploitation of children, in violation of 18 U.S.C. § 2251(a), and Count 3 charging coercion and enticement, in violation of 18 U.S.C. § 2422(b). (D.E. 29 - 33). The plea agreement provides that the Government will dismiss the original Indictment returned June 23, 2021, Count 2 (sexual exploitation of children), Count 4 (coercion and enticement of a minor), and Count 5 (receipt and distribution of child pornography) of the Superseding Indictment at sentencing. (D.E. 32). On November 8, 2022, the final Presentence Investigation Report (PSR) was filed. (D.E. 38).

On November 13, 2022, the defendant filed his sentencing memorandum in which he recommends a sentence of 180 months, the mandatory minimum for a violation of 18 U.S.C. § 2251. (D.E. 41).

## II. LEGAL STANDARD

Although the Sentencing Guidelines are no longer mandatory, *United States v. Booker*, 543 U.S. 220 (2005), "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 552 U.S. 38, 49 (2007); (citing *Rita v. United States*, 551 U.S. 338 (2007)). 18 U.S.C. § 3553(a) specifies the factors courts are to consider when imposing a sentence. 18 U.S.C. § 3553(a) instructs courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" identified in § 3553(a)(2), "just punishment, deterrence, protection of the public, and rehabilitation." *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017). The four identified purposes of sentencing are reached by considering the nature and circumstances of the offense, the history and characteristics of the defendant, the kinds of sentences available, pertinent policy statements, unwarranted sentence disparities among similarly situated defendants, the need to provide restitution to the victims of the offense, and the Sentencing Guidelines. 18 U.S.C. § 3553(a)(1)-(7).

Once a correctly calculated guideline range is determined, the court should afford both parties an opportunity to argue "for whatever sentence they deem appropriate," and "should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party." *United States v. Feemster*, 572 F.3d 455, 461 (8th Cir. 2009) (quoting *Gall*, 552 U.S. at 49). In making this determination, the district court should not presume the Guidelines are reasonable, but assess each case upon the facts presented. *Id*. (citing *Gall*, 552 U.S. at 49). "If the court concludes that a sentence outside of the Guidelines range is warranted, then it must 'consider

the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Id*. (quoting *Gall*, 552 U.S. at 49).

### III. DISCUSSION

#### A. Statutory and Guidelines Calculations

*1. PSR Calculations*

The final PSR found an offense level of 38, and a criminal history category of I. (PSR p. 14, ¶ 67). For Count 1, the statutory mandatory minimum term of imprisonment is 15 years, the maximum term of imprisonment is 30 years, and there is a statutory mandatory minimum of five years supervised release up to a life term of supervision. (PSR p. 14, ¶¶ 67, 69). For Count 3, the statutory mandatory minimum term of imprisonment is 10 years, the maximum term of imprisonment is life, and there is a statutory mandatory minimum of five years supervised release up to a life term of supervision. (PSR p. 14, ¶¶ 67, 69). The defendant is ineligible for probation because it is expressly precluded by statute. (PSR p. 14, ¶ 72). According to the calculations in the PSR, the Guidelines imprisonment range is 235 months to 293 months. (PSR p. 14, ¶ 67). The Government concurs with the calculations.

*2. PSR Objections*

The defendant objects to the 5-level increase pursuant to § 4B1.5(b)(1) because, 'they are based on mere allegations and not evidence or admission by the Defendant." (PSR Adden, p. 2). The defendant further alleges that the enhancement is unwarranted because, "the assertion in PSR ¶ 13 that there is 'no identifiable victim' in this case supports the argument that there is insufficient basis for the enhancement in ¶ 24." (PSR Adden.) The Probation Office notes that it based the enhancement on the defendant's conduct that was outlined in the factual basis of the plea agreement – that, over a month period, he made repeated requests to a minor for actual sexual

contact and sexually explicit images. This position is consistent with the case law that conduct with one victim, even if the victim is a law enforcement officer posing as a minor, can justify the enhancement. In addition, the uncharged relevant conduct has more than sufficient evidence, based on the forensic evidence located on the defendant's electronic devices and the other evidence gathered about the defendant's past behavior, to also establish a pattern of prohibited sexual conduct, warranting the 5-level increase pursuant to § 4B1.5.

The Application Notes on § 4B1.5 provide guidance on whether a defendant engaged in a pattern of activity involving prohibited sexual conduct. Application Note 4(A) defines prohibited sexual conduct as "(i) any offense described in 18 U.S.C. § 2426(b)(1)(A) or (B); (ii) the production of child pornography; or (iii) trafficking in child pornography only if, prior to the commission of the instant offense of conviction, the defendant sustained a felony for that trafficking in child pornography. It does not include receipt or possession of child pornography." Application Note 4(B) provides guidance on how to determine if a pattern of prohibited sexual conduct occurred. ". . . [T]he defendant engaged in a pattern of activity involving prohibited sexual conduct if on at least two separate occasions, the defendant engaged in prohibited sexual conduct with a minor." U.S.S.G. § 4B1.5, note 4(B)(i). "An occasion of prohibited sexual conduct may be considered . . . (b) *without regard to whether the occasion (I) occurred during the course of the instant offense*; or (II) resulted in a conviction or the conduct that occurred on that occasion." U.S.S.G § 4B1.5, note 4(B) (emphasis added), see also *United States v. Rojas*, 520 F.3d. 876, 883 (8th Cir. 2008) (holding that § 4B1.5(b) may apply where there is no prior sex offense conviction and the only "pattern of conduct: is conduct involved in the present offense of conviction), *United States v. Pappas*, 715 F.3d 225, 229 (8th Cir. 2013) (holding that § 4B1.6(b)(1) applies when the defendant engages in repeated prohibited sexual conduct with the same minor), and *United States*

*v. Fox*, 926 F.3d 1275 (11th Cir. 2019) (holding that a defendant's repeated sexual exploitation of a single victim was sufficient to find a pattern of sexual activity, and unrelated instances of prohibited sexual abuse were not required; and the defendant's underlying criminal conviction alone can serve as the basis for a sentencing enhancement for a pattern of activity involving prohibited sexual conduct).

Significantly, Application Note 1 defines "minor" for the purpose of applying the § 4B1.5 enhancement. "'Minor' means (A) an individual who had not attained the age of 17 years; (B) an individual, *whether fictious or not, who a law enforcement represented to a participant (i) had not attained the age of 18 years and (ii) could be provided for the purposes of engaging in sexually explicit conduct; or (c) an undercover law enforcement officer who represented to a participant that the officer had not attained the age of 18 years*." (emphasis added.) § 4B1.5 can apply even if the minor victim turns out to be an undercover law enforcement. Applying this enhancement based on the conversations that the defendant had with "CCbutterfly" would also be consistent with the caselaw. *See United State v. Blazek*, 431 F.3d 1104, 1110 (8th Cir. 2005) and *United States v. Helder* (452 F.3d 751 (8th Cir. 2006).

If this Court however does not find that the conduct against "CCbutterfly" is sufficient to for the enhancement, the conduct outlined in the Offense Behavior Not Part of Relevant Conduct would certainly be sufficient. All of this information was based on the evidence recovered from the defendant's electronic devices. He had multiple conversations with other users who had clearly identified themselves as minors and sought to have them produce sexually explicit images and entice them into engaging in sexual conduct. (PSR p. 7 – 9, ¶¶ 28 – 37). Multiple images of child pornography were located on his phone. (PSR p. 8, ¶ 32). "The court could consider it once it found, *by a preponderance of the evidence*, that the prior prohibited conduct occurred, regardless

of whether it 'resulted in a conviction.'" *United States v. Oakie*, 993 F.3d 1051, 1054 (8th Cir. 2021) (emphasis added). The fact that the minors on the other end of the chats remain unidentified does not negate that the conversations occurred, and law enforcement recovered the conversations and illegal content on the defendant's phone. This evidence is more than sufficient to warrant the § 4B1.5(b) enhancement.

    **B.**    <u>**Statutory Sentencing Factors**</u>

              1.   *Nature and Circumstances of the Offense*

Between January 2021, and February 2021, the defendant engaged in sexually explicit conversations and requested sexually explicit images from a user named "CCbutterfly," who the defendant believed to be a 13-year-old female. (PSR p. 4 – 6). In reality, "CCbutterfly" was an undercover officer operating out of the United Kingdom. (PSR p. 4 – 5, ¶ 4). The defendant contacted "CCbutterfly" via Mylol.com, which bills itself as a dating app for teens. (PSR p. 4 – 5, ¶ 4). At the time the defendant was operating on Mylol.com, he was 29 years old.

The defendant initiated the conversation with "CCbutterfly." (PSR p. 5, ¶ 6). When he started the conversation, "CCbutterfly" made it clear she was only 13 years old and asked if the defendant minded, and the defendant responded, "I don't depending on how mature you are." (PSR p. 6, ¶ 6). During these conversations, the defendant demanded "nude pics," even though "CCbutterfly" would express reluctance. (PSR p. 5 – 6, ¶¶ 9, 10).

The fact that the defendant was trolling a website dedicated to teenagers for the purpose of obtaining sexually explicit conduct from minors and enticing minors to engage in sexual conduct with him is egregious on its own. His conduct, however, was much more far-reaching and egregious than what is limited to "CCbutterfly." The records from MyLOL reveal that the defendant had contacted 560 additional MyLOL users, all of which were listed as being between

the age of 13 and 17 years old. (PSR p. 8, ¶ 30). His intentions were clear because he started each conversation asking if the child had an "age limit" and would introduce sexual topics. (PSR p. 8, ¶ 30).

His behavior was not limited to MyLOL. On his devices, law enforcement discovered approximately 7,900 different chat threads with different users, over multiple social media applications including, Discord, Facebook Messenger, Google Hangouts, Instagram, Kik, Skype, and Text Now. (PSR p. 9, ¶ 37). The content of the message threads indicated that the defendant was looking specifically for minors. (PSR p. 9, ¶ 37). Also discovered on his devices were 26 images and 39 videos of child sexual abuse material, and an additional 105 images and 10 videos were child exploitative and/or age difficult. (PSR p. 8, ¶ 32).

There were four specific conversations that were flagged by law enforcement. (PSR p. 8 – 0, ¶¶ 33, 33, 34, 35, 36). In one conversation, with a 12-year-old user, the defendant sent child pornography, images of his exposed penis, links to pornography videos, and discussed having sexual contact with the user. (PSR p. 8, ¶ 33). In the second conversation, the defendant sent a 13-year-old user messages indicating that he wanted her to be a "sex slave" and asked for "nudes." (PSR p. 8, ¶ 34). In the third conversation, the defendant sent a 14-year-old user an image of his exposed penis. (PSR p. 8 – 9, ¶ 35). In the fourth conversation, the defendant asked a 15-year-old user if she was a "slutty slave for breeding," and requested nude images in specific poses because "daddy needs to check slaves quality for breeding." (PSR p. 9, ¶ 36).

The defendant's conduct was extremely egregious and warrants a sentence significantly higher than the mandatory minimum. The number of threads and the social media sites used indicate that the defendant was spending a significant amount of time trolling the internet for victims. His behavior was not limited to requests and sexually explicit conversations, he was using

images of children being sexually abused to try to entice and groom other children into the same activity. (PSR p. 8, ¶ 33). Due to the nature of the internet, the number of conversations the defendant was having, and the secrecy and shame the victims deal with in association with these types of crimes, it is almost impossible to discern exactly how many victims exist.

There are little to no mitigators in the defendant's offense. The defendant may argue, as he did in his objections to the § 4B1.5 enhancement, that the victims were either law enforcement, or remain unidentified. This is solely because, while the defendant was extremely prolific, his scheme was not that sophisticated, and he used the internet to target and groom children. The fact that he and his victims were able to maintain some level of anonymity should not be a credit to the defendant. The fact that the defendant was not using the most effective scheme to exploit and entice children should not be a credit to the defendant. As such, the Government believes a mid-Guidelines sentence of 264 months is appropriate given the nature and circumstances of the offense.

2. *History and Characteristics of the Defendant*

In fashioning a "sentence sufficient, but not greater than necessary," 18 U.S.C. § 3553(a), "district courts are not only permitted, but required, to consider the history and characteristics of the defendant.' " *United States v. Chase*, 560 F.3d 828, 830 (8th Cir. 2009) (quoting *United States v. White*, 506 F.3d 635, 644 (8th Cir. 2007) (internal quotations omitted)).

The only verifiable mitigator for the defendant is that he has no criminal history. (PSR p. 9 – 10, ¶¶ 40 – 45). His aggravators are overwhelming and the PSR reflects that the defendant may not be a reliable narrator regarding his history and characteristics.[1]

---

[1] Often the defendant's claims would be refuted by records or other witnesses. For example, he accused the jail of failing to properly treat his bone and joint health, and claimed he had appointments with a clinic and a prescription with WalMart. (PSR p. 12, ¶ 55, 56, 57). However,

At the time the defendant was spending significant amounts of time online for the purpose of victimizing minors, he was also the sole caretaker for his 4-year-old and 6-year-old daughters. (PSR p. 11, ¶ 52). There is evidence that the defendant was neglectful in caring for his children, in that the home was in disarray and the 6-year-old showed signs of having to provide her own care and caring for her sister. (PSR p. 11, ¶ 53).

The defendant has no significant educational accomplishments and has not had a consistent history of employment. While he has attended some college, it does not appear that the defendant followed through to actually obtain a degree. (PSR p. 13, ¶ 62). He was unemployed at the time these offenses occurred, and only in the process of appealing his denial of disability benefits.[2] (PSR p. 13, ¶ 63). He was terminated from his last job because of "misconduct." (PSR p. 13, ¶ 62). He has significant substance abuse issues and was commonly using LSD, marijuana, and binge drinking, even though he was the sole caretaker for two young children. (PSR p. 13, ¶¶ 60, 61).

The defendant claims he was the victim of an abusive childhood and that abusive childhood contributed to his current offenses and his alleged mental health issues. (D.E. 41, PSR p. 10 – 12, p. 12, ¶ 58). However, in his own statement, he described his childhood as mediocre. (PSR p. 10, ¶ 48). His mother and his brother both contradict his statements regarding his childhood. (PSR p. 10 – 11, ¶¶ 49 – 51). Nothing about the defendant's childhood excuses or explains the defendant's targeting and grooming of children online for his own sexual gratification.

---

when the jail attempted to follow up, neither the clinic nor WalMart had records associated with the defendant. (PSR p. 12, ¶ 57). The defendant's statements not being able to be verified or refuted is common recurrence throughout the PSR.

[2] The defendant's disability claim is based on injuries that he sustained from a car crash that the defendant caused.

The defendant also claims that a long prison sentence would not deter the defendant. To the contrary, such a sentence would deter him because he would be incapable of effecting these kinds of crimes from a prison cell. The defendant has demonstrated that he is beyond deterrence and has a lengthy history or nonconsensual sexual activity. His mother reported that, in high school, the defendant was part of a group of boys that had been taking girls' underwear and keeping them for themselves and he was disciplined for it. (PSR p. 11, ¶ 51). He had a prior incident in 2019 involving "417 Predators" where the defendant was exposed by a child predator vigilante group for exchanging sexually explicit messages with an individual posing as a 15-year-old. (PSR p. 12, ¶ 58). He attempted to meet the minor female in person but was confronted by members of "417 Predators." (PSR p. 12, ¶ 58). Following this incident, he attempted to kill himself by crashing his car. (PSR p. 12, ¶ 58). Clearly, the defendant fully understood that what he was doing was wrong, but just two years later, the defendant was back to the same illegal activity involving minors. It is clear that he is not an individual amendable to deterrence, and the way to keep the community and minors safe is to incarcerate the defendant for a lengthy period of time.

There are few, if any, mitigators in the defendant's history and characteristics. On the other hand, there are many aggravators. The Government believes that a lengthy sentence, well above the mandatory minimum, is necessary, and a 264-month sentence adequately addresses the mitigators and aggravators of the defendant's history and characteristics.

> 3. *Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense*

Based on the defendant's history and the nature of the offense, a 264-month sentence would reflect the seriousness of the offense, promote respect for the law, and provide punishment that is sufficient, but not greater than necessary. The defendant has demonstrated though his actions and criminal history he has little to no respect for the laws of the United States, that being exposed as

a child predator on the internet is not sufficient to deter him, and nothing short of a lengthy sentence will promote respect for the law and reflect the seriousness of the defendant's crimes.

> 4. *Need to Afford Adequate Deterrence to Criminal Conduct*

A 264-month sentence would provide a deterrent to this defendant and those who wish to sexually exploit children in our community, while sending a message to others that the sexual exploitation of children will not be tolerated. "Child pornography is nothing short of an epidemic in the United States. In 2018, technology companies reported a record 45 million photos and videos of the abuse last year." Michael H. Keller and Gabriel J.X. Dance, *The Internet is Overrun With Images of Child Sexual Abuse. What Went Wrong?*, N.Y. Times, September 29, 2019. Child pornography is a profitable business, with some sources estimating that child pornography has an estimated annual revenue of $3 billion. Mary Pulido, *Child Pornography: Basic Facts About a Horrific Crime,* HuffPost, October 17, 2013. Based on the profitability and the evolution of technology that has made it so much easier to engage in the production, receipt, possession, and distribution of child pornography, it becomes necessary to deal with those who engage in the child pornography industry swiftly and harshly if there is any hope of curbing the problem of child pornography. The defendant was highly engaged in sexually exploiting children online. Not only did he seek out these images, he distributed these images in an effort to groom children, and he attempted to entice them into engaging in actual sexual conduct.

> 5. *Need to Protect the Public from Further Crimes of the Defendant*

"Adequate protection is a function of two variables: the level of risk that conduct will occur and the level of harm that will be inflicted if that conduct does occur." *United States v. Irey*, 612 F.3d 1160, 1217 (11th Cir. 2010) (citing *United States v. Boyd*, 475 F.3d 875, 877–78 (7th Cir. 2007)). A 264-month sentence would protect the public from future crimes of this defendant.

Based upon the defendant's history and characteristics, and the nature of the offense, it is clear that society is in want of protection from this defendant and his level of risk for future conduct is high. All of these factors, combined with the nature of the present offense, makes it clear that the defendant is a danger to society and needs to be incarcerated for a significant period.

## V. CONCLUSION

Section 18 U.S.C. § 3553 requires this Court to impose a sentence that considers a variety of factors, including the advisory Guidelines' range. The Government respectfully requests that the defendant's behavior and history, the need to promote respect for the law, the need to protect the public from the defendant, the need to avoid unwarranted disparity in sentences, and any other statutory sentencing factors be considered in reaching an appropriate sentence. As such, the Government respectfully requests this Court impose a Guidelines sentence of 264 months' imprisonment to be followed by an appropriate term of supervised release as determined by this Court.

Respectfully submitted,

Teresa A. Moore
United States Attorney

*/s/ Stephanie L. Wan*
Stephanie L. Wan
Assistant United States Attorney
Western District of Missouri
901 St. Louis Street, Suite 500
Springfield, Missouri 65806
(417) 831-4406

## CERTIFICATE OF SERVICE

     I hereby certify that on this the 14th day of November, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which sent e-mail notification of such filing to all CM/ECF participants in this case.

                                            */s/ Stephanie L. Wan*
                                            Stephanie L. Wan